**STATE of Tennessee, Appellant,**

v.

**Francis Louise Fleming McCLAIN,
Appellee.**

Supreme Court of Tennessee,
at Knoxville.

March 26, 1984.

William M. Leech, Jr., Atty. Gen., Steven A. Hart, Asst. Atty. Gen., Nashville, for appellant.

William T. "Bill" Roper, Chattanooga, for appellee.

OPINION

FONES, Chief Justice.

We granted the Rule 11 application of the State to review the Court of Criminal Appeals' decision to reverse defendant's conviction of murder in the first degree based upon their finding of an unexplained jury separation within the meaning of *Gonzales v. State*, 593 S.W.2d 288 (Tenn.1980).

A brief summary of the facts salient to this issue follows. After the jury had been selected, impaneled and duly accepted by both sides, a pre-trial suppression hearing was held. The jury at this time had not

been sworn.[1] The motion to suppress was overruled. The jury was brought back into the courtroom and told that presentation of the pleadings and evidence would begin the next morning. As the jury was to be sequestered, two jury officers, Charles and Betty Tate, were sworn to take charge of them. The trial judge instructed the jurors to cooperate with the officers and to stay together rather than separating and wandering off from the main body of the jury. In addition, the jury was told not to watch, read or listen to any news reports concerning the case. The jury was taken to the Downtowner Motel (now called the Gateway Motel) where they were to spend the night under the care and supervision of the sworn jury officers, the Tates. The jurors' phones had been blocked off at the switchboard and any calls or problems would be routed to the Tates' room.

At approximately 1:00 a.m., the Tates received a telephone call from one of their neighbors informing them that their house was on fire. They immediately called the trial judge who gave them permission to leave the motel and go to their home. The Tates called another jury officer, Officer Miller, who was at the same motel supervising another jury and asked him to take responsibility for their jury. Officer Miller agreed and arrangements were made to direct all calls and problems from the Tates' jurors to Miller's room, rather than the Tates'. Mr. Tate was gone for an hour while Mrs. Tate was gone for approximately two.

Upon opening of court the next morning, defendant moved for a mistrial [continuance] "because the jury was separated" from the officer. The trial court overruled the motion, the jury was sworn and the trial began.

The Court of Criminal Appeals, with one judge dissenting, reversed and remanded for a new trial finding the trial court had

"failed to appreciate the teaching" of *Gonzales v. State, supra.* *Gonzales* involved a total and complete separation of the jury. As the second day of Gonzales' trial fell on election day, the trial judge allowed the jurors to go home after giving them a strong admonition not to read any newspaper stories or listen to any radio or television reports about the trial. That evening, however, a television movie entitled "Sybil" was aired which graphically depicted child abuse which was the central issue in the Gonzales' trial. This Court held that in such a case, when evidence of potential prejudice to a defendant is presented, the burden then shifts to the State to affirmatively show that no prejudice occurred during the separation.

▪ In light of the circumstances of *Gonzales*, it was specifically noted that it was unnecessary to define a "technical" or "minimum" separation that would trigger the *"Hines* rules" because there was a total separation of the jury, as it was allowed to dissolve and mingle at will with the citizenry. The *"Hines* rules," as are applicable, state:

"The principles laid down in these cases are, 1st, that the fact of separation having been established by the prisoner, the possibility that the juror has been tampered with, and has received other impressions than those derived from the testimony in court, exists, and *prima facie* the verdict is vicious; but, 2d, this separation may be explained by the prosecution, showing that the juror had no communication with other persons, or that such communication was upon subjects foreign to the trial, and that, in fact, no impressions other than those drawn from the testimony, were made upon his mind. But 3d, in the absence of such explanation, the mere fact of separation is sufficient ground for a new

one which may occur after evidence has been submitted to them.... The mischiefs which may result from a separation are the same in the one case, and in the other." *Wesley v. State,* 30 Tenn. 502 at 503 (1851).

---

1. Having been selected, accepted and directed to be sequestered by the trial judge, it was immaterial that the jury was not sworn until the following morning. In Tennessee, no distinction has been made "between a separation before the jury are sworn and charged with the case and

**66**

trial." *Hines v. State,* 27 Tenn. 597, 602 (1848).

■ The first principle of *Hines* is premised upon "the fact of separation having been established by the prisoner, ..." The burden, therefore, is upon a defendant to show a separation of jurors, "technical," "minimum" or otherwise.

■ There is no improper separation for jurors to occupy different rooms in a motel as long as they are under the supervision of an appointed and sworn jury officer. *Smith v. State,* 205 Tenn. 502, 327 S.W.2d 308 (Tenn.1959). In this case, the appointed jury officers, the Tates, were given permission by the trial judge to leave the jury because of exigent circumstances. Both officers were back on duty within two hours. Another officer, while not appointed by the judge to watch this particular jury, did assume the Tates' responsibilities while they were gone.

Jury officers perform a safeguarding function in ensuring that no improper outside influence is attempted or exerted on jurors. When appointed officers are absent, and hence, not attending their jury, the possibility that there may be improper separation is increased.

■ However, it is not the possibility of a separation that triggers the *Hines* and *Gonzales* rules, but rather a *separation* itself. We agree with the dissent from the Court of Criminal Appeals below which stated:

It requires more on the part of a defendant than to show that a jury had the opportunity to separate, and might have been subjected to community influence if they availed themselves of that opportunity. The fact of separation must be established.

■ No evidence was adduced by defendant that there was any improper separation of jurors. Accordingly, there was no affirmative burden upon the State to show no prejudice occurred during the absence of the appointed jury officers.

The judgment of the Court of Criminal Appeals is reversed and this case is re-

manded for consideration of the issues that were pretermitted.

COOPER, BROCK, HARBISON and DROWOTA, JJ.